UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATELYNN LOUETTA SPEARS, | : | CIVIL NO: 1:20-CV-00536 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Katelynn Louetta Spears ("Spears"), seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying her

claim for Supplemental Security Income ("SSI") and Child's Insurance Benefits

("CIB") under the Social Security Act.  We have jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P.
25(d) (providing that when a public officer sued in his or her official capacity
ceases to hold office while the action is pending, "[t]he officer's successor is
automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in
such office.").

decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to *9-20*.[2]  On August 15, 2017, Spears protectively filed[3] an application for SSI benefits, contending that she became disabled on January 1, 1999. *Admin. Tr.* at 233–42.  Since Spears was born in December of 1996, *see id*. at 233, she would have been two years old in January of 1999.  On August 15, 2017, Spears also protectively filed[4] an application for CIB,[5] again contending that she became

---

[2]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Spears's claims.

[3]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.  Here, Spears's application for SSI is dated September 8, 2017. *See Admin. Tr.* at 233.  But there are references in the record to the filing date as August 15, 2017. *See id*. at 138, 151.  And August 15, 2017, is the date identified by the ALJ as the date that Spears protectively filed her application for SSI. *Id*. at 111.

[4]  *See supra* note 3.

[5]  CIB is payable to a child "of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual" in several circumstances. 42 U.S.C. § 402(d)(1)(B); *see also* 20 C.F.R.

disabled on January 1, 1999. *Id*. at 243–49.  After the Commissioner denied her claims at the initial level of administrative review, Spears requested an administrative hearing. *Id.* at 170–82.  And on January 23, 2019, with the assistance of counsel, she testified at a hearing before Administrative Law Judge ("ALJ") Scott M. Staller. *Id*. at 9–44.  Significantly, at the hearing, Spears amended the date she allegedly became disabled from January 1, 1999, to March 15, 2016. *Id*. at 13–14.  Spears was 19 years old in March of 2016. *Id*. at 14.[6]

The ALJ determined that Spears had not been disabled from March 15, 2016, the amended alleged onset date, through the date of his decision on March 21, 2019. *Id*. at 121.  And so he denied Spears benefits. *Id*.  Spears appealed the ALJ's decision to the Appeals Council, which denied her request for review on March 24, 2020. *Id*. at 1–7.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In April of 2020, Spears began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and contains errors of law. *Doc. 1* at ¶¶ 13, 19–37.  She requests that the court reverse the

---

§ 404.350(a).  Here, Spears's application for CIB is based on her father's status as a disabled individual. *Admin*. *Tr*. at 14, 243.

[6]  One of the circumstances when an individual is entitled to CIB is when the individual is over 18 years of age and was disabled before she turned 22 years old. *See* 42 U.S.C. § 402(d)(1)(B), 20 C.F.R. § 404.350(a)(5).

Commissioner's decision, award benefits, and grant her other relief that may be justified, such as attorney's fees. *Id*. at 9 (Wherefore Clause).

After the Commissioner filed an answer and a certified transcript of the administrative proceedings, *docs. 8, 9*, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned, *doc. 16*.  The parties then filed briefs, *see docs. 19*, *24*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Spears was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

## B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II[7] or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

_____

[7]  CIB falls under Title II of the Social Security Act.  And the same definition of disability that applies to disability insurance benefits applies to CIB. *See* 20 C.F.R. § 404.1505(a) ("We will use this definition of disability if you are applying for a period of disability, or disability insurance benefits as a disabled worker, or child's insurance benefits based on disability before age 22 . . . .").  Further, the same rules, including the same five-step sequential evaluation process, that applies to disability insurance benefits applies to CIB. *See* 20 C.F.R. § 404.1520(a)(2) ("Theses rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability.").

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).


## IV.  The ALJ's Decision.

On March 21, 2019, the ALJ denied Spears's claims for benefits. *Admin. Tr.* at 108–25.  At step one of the sequential-evaluation process, the ALJ found that Spears had not engaged in substantial gainful activity since March 15, 2016, the alleged onset date. *Id.* at 113.  In this regard, the ALJ noted that although Spears had briefly worked in 2017 for Texas Roadhouse and in 2018 for U-Haul, this work was not substantial gainful activity. *Id.*

8

At step two of the sequential-evaluation process, the ALJ found that Spears had the following severe impairments: right-sided cerebral palsy with contracture of the Achilles tendon and mild tibiotalar osteoarthritis; congenital clubbing of the right foot, status post right open Achilles tendon lengthening; migraines; major depressive discover; post-traumatic stress disorder; and generalized anxiety disorder. *Id*. at 113–14.  The ALJ also noted that Spears was diagnosed with obesity, anemia, allergic rhinitis, a neoplasm on the base of her tongue, and a history of hydrocephalus, but he concluded that those impairments are not severe impairments. *Id*. at 114.

At step three of the sequential-evaluation process, the ALJ found that Spears did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. More specifically, the ALJ discussed Listing 11.07 in connection with Spears's cerebral palsy and Listing 1.02 in connection with her arthritis. *Id*.  And in connection with Spears's mental impairments, the ALJ addressed Listings 12.04, 12.06, and 12.15. *Id*. at 114–16.  The ALJ determined that Spears did not meet any of those listings. *Id*.

The ALJ then determined that Spears has the RFC to perform light work[8] with some limitations. *Id*. at 116.  She can never climb ladders, ropes, or scaffolds, and she cannot be exposed to unprotected heights. *Id*.  The ALJ also determined that she "can understand, remember or carry out simple, one to two step instructions, and she can make judgments on simple work-related decisions." *Id*. And he determined that "[s]he can occasionally interact with coworkers, supervisors and the public in a routine work setting." *Id*.

In making this RFC assessment, the ALJ reviewed Spears's assertions regarding her impairments and limitations.  He noted that she claimed to be disabled "due to anxiety, depression, post-traumatic stress disorder, cerebral palsy, panic attacks, clubfoot, hydrocephalus, short-term memory lass and heart palpitations." *Id*.  "She reports that she also has persistent fatigue, depressed mood, sleep disturbance, panic attacks, paranoia, racing thoughts, tremors, migraine headaches with blurred vision, right-sided weakness, and depressed mood." *Id*. at

---

[8]  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

116–17.  And he noted that Spears contends that her "impairments affect her ability to lift, squat, bend, reach, walk, climb stairs, remember, complete tasks, concentrate, understand and follow instructions." *Id*. at 117.  Spears also reported that she can walk one to two blocks. *Id*.  She further "noted that she has difficulty following written and oral instructions and handling stress and changes in routine." *Id*.  And that ALJ noted that "[w]hile [Spears] initially did not report difficulty in getting along with others in her paperwork, she testified that she has difficulty getting along with others due to irritability." *Id*.

The ALJ also considered Spears's daily activities, noting that "she is independent in performing matters of personal care but it takes her longer to perform these tasks." *Id*.  "She can prepare simple meals and take medicine with verbal reminders." *Id*.  And she "is able to perform household chores and shop for necessities, but [she] reports that she does not go out alone due to anxiety and depression." *Id*.  "Nonetheless," according to the ALJ, "she also indicated that she does not[9] have a driver's license." *Id*.  The ALJ noted that Spears "spends time with others and manages her finances." *Id*.  "At the hearing, she testified that she has pain with sitting due to her clubfoot disorder." *Id*.  The ALJ also noted that Spears's medications include Lamictal and Tylenol. *Id*.

---

9  Spears testified that she has a driver's license, but she can drive only short distances. *Admin*. *Tr*. at 18–19.  Given the ALJ's previous sentence and the syntax of his sentence regarding the driver's license, it may be that the ALJ's inclusion of "not" here was a typographical error.

The ALJ also reviewed Spears's treatment records.  He recognized that she has a "history of right-sided cerebral palsy with contracture of the Achilles tendon and mild tibiotalar osteoarthritis, but" he concluded that "the severity of [her] symptoms would allow [her] to perform a range of light work" with the limitations he set forth. *Id.* (citations to the record omitted).  He noted that Spears's "physicians characterize her cerebral palsy and osteoarthritis as mild in nature." *Id.* (citation to the record omitted).  As to Spears's foot condition, the ALJ noted that "[a]n x-ray of the right foot dated October 20, 2017 showed calcaneonavicular coalition and hindfoot cavovarus[,]" that her "records also show a history of right foot pain secondary to contracture of the Achilles tendon and congenital clubbing of the right foot, but improvement was noted with right open Achilles tendon lengthening in November 2017." *Id.* (citations to the record omitted).  "Records show some reports of leg pain but she does not require ongoing use or narcotics or further surgical intervention." *Id.* (citation to the record omitted).

As to Spears's headaches, the ALJ concluded that her records show that "her headaches are only once per month and are associated with a brief 'brain freeze' sensation." *Id.* (citation to the record omitted).  He further noted that "no abnormality was identified via brain CT in December 2016, and there is no cardiac etiology related to her palpitations, as they were associated with her anxiety." *Id.* (citation to the record omitted).

The ALJ concluded that based on the clinical evidence regarding Spears's physical limitations, she can nevertheless perform a range of light work. *Id.* In this regard, the ALJ noted that "[f]rom a longitudinal standpoint, [Spears] has shown inability to heel walk due to her clubfoot on examination, but there is no evidence that [she] presents with markedly diminished range of motion, significant weakness, muscle atrophy, significant motor deficits, absent reflexes, or sensory disturbances." *Id.* at 117–18 (citations to the record omitted). And she "has shown occasional gait abnormality (consistent with equinus contracture of her right foot with compensatory weightbearing on the left), but on other occasions, she ambulates with a normal gait, and she does not require an assistive device for ambulation." *Id.* at 118 (citations to the record omitted). And the ALJ concluded that she "is able to climb stairs, toe walk and sit to stand without assistance; however, there is some evidence of balance and coordination deficit." *Id.* (citations to the record omitted). "In light of this evidence," the ALJ found "that she can perform light exertional activity but that she can never climb ladders, ropes or scaffolds or be exposed to unprotected heights as a precautionary measure." *Id.*

The ALJ also considered the medical records regarding Spears's mental impairments noting that although they "reveal a history of major depressive disorder, post-traumatic stress disorder and general anxiety disorder with panic attacks," Spears would still be able to perform work within the RFC that he set

forth. *Id*. (citations to the record omitted).  The ALJ noted that Spears's "symptoms include excessive worry, crying spells, feelings of guilt, hopelessness, irritability, concentration difficulties, diminished self-esteem, hypervigilance, flashbacks, nightmares, fatigue, loss of appetite, difficulty falling asleep, panic attacks, social withdrawal, and short-term memory deficits." *Id*. (citations to the record omitted). But he observed that her "symptoms are managed with psychotropic medication." *Id*. (citation to the record omitted).  In this regard, he further observed:

> While the longitudinal evidence shows that her symptoms wax and wane, as she has reported to the ER with some panic attacks and reported unstable mood in late 2018, she reported that [her] depression and anxiety were stable in April 2017 and that her anxiety was controlled with Ativan in December 2018. In May 2017, [Spears] reported that her post-traumatic stress disorder was managed with therapy and that she was not taking medication.  She reported in October 2017 that she has used Sertraline very successfully.

*Id*. (citations to the record omitted).

The ALJ also concluded that the medical records do not support Spears's assertion that she has panic attacks daily given that records from her January 7, 2018 visit to the Hershey Medical Center for a panic attack state that she said that she had not had a panic attack in months. *Id*. (citation to the record omitted).

The ALJ also noted that "at the mental consultative examination, [Spears] reported no history of psychiatric admission and no participation in therapy[,]" and she "does not require a highly supportive living arrangement, intensive medical

care, or other significant treatment." *Id.* (citation to the record omitted). He

observed:

> On mental status examination, [Spears] has shown anxious
> behavior, mood and affect abnormality, and impaired judgment,
> insight, attention/concentration and memory due to anxiety, but
> she generally shows fair insight and judgment, appropriate eye
> contact, cooperative behavior, adequate social skills, normal
> speech, and coherent and goal directed thought processes with
> no evidence of delusions, hallucinations or paranoia in the
> clinical setting. She reports some difficulty in managing her
> finances and inability to go out alone; however, she is able to
> leave her home, prepare simple meals, care for her 2 year old
> daughter, read, take care of personal care matters and perform
> household . . . chores.

*Id.* (citations to the record omitted). In sum, the ALJ concluded that the "evidence

suggests that she can perform simple work activity in a routine work setting with

occasional social interaction." *Id.*

The ALJ found that Spears's medically determinable impairments

reasonably could be expected to cause her alleged symptoms. *Id.* at 117. But he

found that her statements regarding the "intensity, persistence and limiting effects"

of her symptoms were "not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in [his] decision." *Id.*

In making his RFC finding, the ALJ also reviewed the opinion evidence in

the record. *Id.* at 118–19. As to Spears's physical limitations, the ALJ reviewed

the opinion of Dr. Maura Smith-Mitsky, a state-agency physician, who suggested

that Spears's physical impairments caused only mild functional limitations. *Id.* at

15

119 (citations to the record omitted).  The ALJ concluded that this opinion was not supported by the evidence of Spears's "leg/ankle pain, need for surgery, and occasional gait abnormalities" and was not consistent with her "reports that she has limited ability to lift, squat, bend, reach, walk, [and] climb stairs." *Id*.  He found Dr. Smith-Mitsky's "opinion not persuasive and that [Spears] should be limited to light exertional activity." *Id*.

The ALJ also considered the three opinions in the record as to Spears's mental limitations.  First, he considered and found persuasive the opinion of Dr. Davis, who performed a consultative, mental-status evaluation of Spears in October 2016, and who opined the Spears had "moderate limitation in the ability to interact appropriately with others, respond appropriately to usual work situations and to changes in a routine work setting, make judgments on complex work-related decisions, and understand, remember and carry out complex instructions." *Id*. at 119 (citation to the record omitted).  The ALJ found Dr. Davis's opinion "supported by findings of impaired attention/concentration, insight, judgment and memory on examination in finding that she would have limited ability to perform complex work activity." *Id*.  That ALJ also found Dr. Davis's opinion "consistent with [Spears's] reports of social isolation, irritability and anxiety in finding that she would have limited ability to interact with other." *Id*.  "Given the totality of the evidence and this opinion," the ALF found that Spears "can understand, remember

16

or carry out simple, one to two step instructions and make judgments on simple work-related decisions, and she can occasionally interact with coworkers, supervisors and the public in a routine work setting." *Id*.

Next, the ALJ considered and found partially persuasive the opinion of Dr. Kathleen Ledermann, who performed a consultative, mental-status evaluation of Spears in November 2017, and who opined that Spears had "moderate limitation in the ability to interact appropriately with mild to no limitation in the ability to interact appropriately with coworkers and supervisors, respond appropriately to usual work situations and to changes in a routine work setting, make judgments on work-related decisions, and understand, remember and carry out instructions." *Id*. (citation to the record omitted). The ALJ found Dr. Ledermann's opinion "consistent with [Spears's] hypervigilance in going out in public, reports of social isolation, and anxiousness in the clinical setting in determining that she would have moderate limitation in the ability to interact appropriately." *Id*. (citation to the record omitted). But the ALJ determined that Dr. Ledermann's finding that Spears had only mild limitation in the ability to perform complex work activity was "not supported by the findings of impaired insight, judgment, memory and attention/concentration noted at that evaluation." *Id*. The ALJ concluded that the "evidence suggests that she would have greater limitation." *Id*.

Finally, the ALJ considered and found partially persuasive the opinion of Dr. Soraya Amanullah, a state-agency physician, who "opined in November 2017, that [Spears] has no limitations related to adaptation, understanding or memory and moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public." *Id*. (citation to the record omitted).  The ALJ found Dr. Amanullah's opinion "consistent with the findings of impaired insight, judgment, memory and attention/concentration in determining that she would have limited ability to carry out detailed instructions and maintain attention and concentration for extended periods." *Id*.  But the ALJ determined that Dr. Amanullah's finding that Spears had "no limitation in adaptation, understanding or memory is not supported by [Spears's] trips to the ER for panic attacks and findings of impaired memory on examination." *Id*.

At step four of the sequential-evaluation process, the ALJ found that Spears had no past relevant work. *Id*. at 120.

At step five of the sequential-evaluation process, considering Spears's age, education,[10] work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were other jobs—such as cleaner, housekeeping; bakery worker, conveyor line; and agricultural produce sorter—that exist in

---

[10]  Spears testified that ninth grade was the highest grade she completed, *Admin. Tr.* at 19, and the ALJ determined that Spears has a limited education, *Id*. at 120.

significant numbers in the national economy that Spears could perform. *Id*. at 120–21.

In sum, the ALJ concluded that Spears was not disabled from March 15, 2016, through the date of his decision on March 21, 2019. *Id*. at 121.  Thus, the ALJ decided, she was not entitled to SSI. *Id*.  And because she was not disabled before turning 22, she was also not entitled to CIB. *Id*.

## V.  Discussion.

The brief filed by Spears is unfocused (at times rambling) and touches on many issues. *See doc. 15* (passim).  Spears nevertheless attempts to distill her claims into the following three claims: (1) that the ALJ erred and abused his discretion by failing to include in the RFC limitations from the impairments that he considered to be severe; (2) that the ALJ erred and abused his discretion by failing to include in the RFC limitations from impairments that he considered to be non-severe or that he did not even mention; and (3) that the ALJ erred and abused his discretion by failing to consider medical records that were submitted after the hearing. *Id.* at 1–2.  We start with the third claim.

### A.  The ALJ did not err in failing to consider medical records that were submitted after the hearing.

In support of some of her other arguments, Spears points to some of the medical records that were submitted after the ALJ's hearing. *See doc. 19* at 15 (citing to *Admin. Tr.* 75–86).  Thus, we begin by addressing Spears's claim that the ALJ erred in failing to consider medical records that were submitted after the hearing.

Although Spears contends that the ALJ erred and abused his discretion by failing to properly consider relevant medical records that were submitted after the hearing, she fails to develop an argument in that regard.  The local rules of court address the requirements for the argument section of a Social Security plaintiff's brief:

> The argument shall be divided into sections separately addressing each issue and shall set forth the contentions of plaintiff with respect to each issue and the reasons therefor. Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position.

M.D. Pa. L. R. 83.40.4(c).  Spears's brief fails to comply with this rule.  Spears does not cite to any statute, regulation, or cases to support her contention that the ALJ erred in failing to consider medical records submitted after the hearing.

Further, while Spears points to the portion of the record that contains the medical records at issue,[11] she does not cite to any portion of the record to support an inference that she requested that the ALJ keep the record open.  And, as the Commissioner points out, Spears did not submit most of the medical records at issue until after the ALJ's decision.  Spears makes no argument for how the ALJ could have erred by failing to consider records that she did not submit until after his decision.  Because Spears failed to develop her argument, no further discussion of this claim is necessary.

Nevertheless, we note that "[e]vidence submitted after the administrative law judge's decision cannot be used to argue that the administrative law judge's decision is not supported by substantial evidence." *Sturges v. Colvin*, No. 3:12-CV-01633, 2014 WL 1682021, at *4 n. 12 (M.D. Pa. Apr. 28, 2014) (citing *Matthews v. Apfel,* 239 F.3d 589, 594–95 (3d Cir. 2001)).  Such evidence can be considered only to determine whether to remand under Sentence Six of 42 U.S.C. § 405(g). *Id.* But a remand under Sentence Six requires that the evidence be "new and material"

---

[11]  At the hearing, the ALJ admitted records from Philhaven that Spears submitted a week prior to the hearing. *See Admin. Tr.* at 12.  Some of those records accepted by the ALJ at the hearing are duplicates of records that Spears erroneously contends were submitted after the hearing. *Compare Admin. Tr.* at 128–35 (records cited by Spears as records submitted after the hearing) *with Admin. Tr.* at 1468–70 (records submitted prior to the hearing and accepted by the ALJ, which (except for cover letters to counsel and invoices to counsel for the records) are the same as *Admin. Tr.* 128–35).

and that "there was good cause why it was not previously presented to the ALJ."
*Matthews*, 239 F.3d at 593.  Here, Spears make no argument regarding the
elements of a remand under Sentence Six of 42 U.S.C. § 405(g).

### B.  The ALJ did not err by failing to impose additional limitations in Spears's RFC.

As set forth above, Spears's other two claims purportedly concern the ALJ's
RFC determination.[12]  She claims that the ALJ erred and abused his discretion in
formulating her RFC by failing to include in the RFC limitations from the
impairments that he considered to be severe, from impairments that he considered
to be non-severe, and from impairments that he did not even mention.  Because all
these contentions concern the RFC, we address them together.

"The ALJ—not treating or examining physicians or State agency
consultants—must make the ultimate disability and RFC determinations."
*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is
"'that which an individual is still able to do despite the limitations caused by his or
her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359
n.1); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing a
claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220
F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to

---

[12]  As noted above, Spears's brief is a mismash of arguments, and she touches on
many issues without developing an argument as to those issues.

credit but 'cannot reject evidence for no reason or for the wrong reason.'"
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at
1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is
deferential, and that RFC assessment will not be set aside if it is supported by
substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6
(M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir.
2002) ("We examine the ALJ's conclusions as to [the claimant's] residual
functional capacity with the deference required of the substantial evidence standard
of review.").  Applying the above standard to the present record, we conclude that
the ALJ's RFC determination is supported by substantial evidence.

Spears contends that the ALJ offered "no real limitations related to [her]
right-sided weakness and pain issues, issues related to ambulation, pain with
sitting, standing and walking, frequent migraine headaches, and issues from
multiple severe and persuasive mental-health related impairments." *Doc. 19* at 14.
And setting forth a litany of impairments and issues based on her medical records
and her testimony, she suggests that the ALJ should have included greater
limitations in the RFC. *Id*. at 14–16.  But without a specific argument that the ALJ
failed to consider particular evidence or to include a particular limitation in the
RFC, such a general argument is not persuasive and does not show that the ALJ's
decision was not supported by substantial evidence.

Spears does make several more specific arguments, which we will address. She contends that her medical records and her testimony confirm that she has pain in her right foot whenever she walks or stands. *Doc. 19* at 16.  She also notes that at times she was instructed to "be non-weight bearing and to use a CAM boot for the right foot," and that she "used a wheelchair, walker, crutches or cane for various periods after his right foot surgeries." *Id*. at 16–17.  She suggests that the ALJ failed to consider this evidence. *Id*.  But as the above summary of the ALJ's decision shows, the ALJ did consider Spears's foot pain.

And as to the use of a CAM boot, wheelchair, walker, crutches, and cane, Spears has not pointed to medical records that show that any of those devices were prescribed other than as temporary measures following her November 2017 surgery on her Achilles tendon, which surgery the ALJ did address.  Spears does point to her hearing testimony where she testified that on occasion, she still uses the wheelchair, for example, if she goes to the mall or has a day out. *See doc. 19* at 17 (citing to *Admin. Tr.* at 29–30 (hearing testimony)).  Although the ALJ did not specifically mention that particular testimony, he concluded that Spears's statements concerning *inter alia* the limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" *Admin. Tr.* at 117.  And in reviewing the medical evidence, he noted that Spears "does not require an assistive device for ambulation." *Id*. at 118.  The medical

24

evidence that he cited does not show that a wheelchair was prescribed for Spears or that she used such a wheelchair.  In sum, the ALJ adequately addressed Spears's foot pain.

Spears also contends that the ALJ failed "to consider or reference the fact that [she] has cerebral palsy which has limited her for her entire life, including both physically and cognitively[,]" and he did not consider her right-sided weakness and lack of coordination. *Doc. 19* at 17.  This contention is patently meritless as the ALJ did explicitly address that Spears has cerebral palsy: he found her cerebral palsy to be a severe condition; he analyzed whether her cerebral palsy met the criteria of Listing 11.07; and he acknowledged that she claimed to be disabled because of cerebral palsy, that her medical records show a history of cerebral palsy, and that her treating physicians characterized her cerebral palsy as mild in nature. *Admin. Tr.* at 113–14, 116–17.  He also addressed her physical and cognitive limitations. *Id*. at 115, 117–18.  He further acknowledged her right-sided weakness and that "there is some evidence of balance and coordination deficit." *Id*. at 117–18.[13]  And in light of such, he found that "she can never climb ladders,

---

[13]  In support of her assertion regarding her balance issues, Spears cites to page 660 of the Administrative Record. *See doc. 19* at 17 (citing to *Admin. Tr.* at 660). Although that page, which is the first page of a July 13, 2015 Maternal Fetal Medicine consultation, mentions Spears's cerebral palsy, it says nothing about balance issues. *Admin. Tr.* at 660.  In fact, it says that Spears currently "has no physical or mental restrictions." *Id*.  Any suggestion that the ALJ erred by failing to consider this record is without merit.

ropes or scaffolds or be exposed to unprotected heights as a precautionary measure." *Id*. at 118.

Spears also contends that the ALJ failed to include any limitations regarding her short-term memory loss and her panic attacks, which she contends she has three to four times per day and which conditions caused her to lose her prior part-time jobs. *Doc. 19* at 17–18.  Again, however, the ALJ did not fully credit Spears's contentions about the severity of her limitations. *Admin. Tr.* at 117.  And the ALJ did acknowledge that Spears showed "occasional impairment in memory"; that her symptoms included "short-term memory deficits"; and that on mental status examination, she show impaired memory due to anxiety. *Id*. at 115, 118 (citations to the record omitted).  Further, while the ALJ noted that Spears experienced panic attacks, he pointed to evidence in the record that was inconsistent with her allegations that she had daily panic attacks, specifically a record from January 2018, that shows "that she reported to Hershey Medical Center for a panic attack but indicated that she had not had a panic attack in 'months.'" *Admin. Tr.* at 118 (citation to the record omitted).  He also noted that her mental-health symptoms were managed with psychotropic medication. *Id*.  And, he concluded, while her

symptoms wax and wane, the "evidence suggests that she can perform simple work activity in a routine work setting with occasional social interaction." *Id.*[14]

Spears also suggests that the ALJ's decision is not supported by substantial evidence because he relied on the state agency consultants even though they did not personally examine her and they did not have many of her medical records when they rendered their opinions.[15] But opinions of state agency consultants "merit significant consideration." *Chandler*, 667 F.3d at 361. Further, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.* And the mere fact

---

[14] Spears suggests (in the heading of her second claim) that the ALJ failed to consider limitations from her chest pain with palpitations. *See doc. 19* at 20. But she does not develop an argument in this regard apart from her argument regarding anxiety. Nevertheless, we note that the ALJ observed that there was "no cardiac etiology related to [Spears's] palpitations," and that her heart palpitations were related to her anxiety. *Admin. Tr.* at 117. In addition to anxiety, Spears contends (again without developing a specific argument) that the ALJ should have also considered her major depressive disorder and her PTSD in connection with her RFC. *See doc. 19* at 21. The ALJ did, however, consider those impairments. *See Admin. Tr.* at 118. Finally, we note that in the heading of her second claim, Spears mentions left-leg pain, *see doc. 19* at 20, but again she fails to develop an argument in this regard. In any event, the ALJ noted that "[r]ecords show some reports of leg pain but she does not require ongoing use of narcotics or further surgical intervention." *Admin. Tr.* at 117 (citation to the record omitted).

[15] Although Dr. Amanullah and Dr. Smith-Mitsky did not examine Spears, both Dr. Davis and Dr. Ledermann performed a Mental Status Evaluation of Spears. *See Admin. Tr.* at 137–50, 152–64 (Disability Determination Explanations containing Dr. Amanullah's and Dr. Smith-Mitsky's opinions); 333–40 (Dr. Davis's Mental Status Evaluation and Medical Source Statement); and 1111–18 (Dr. Ledermann's Mental Status Evaluation and Medical Source Statement).

that some additional medical evidence is received after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id*.  Here, there was no medical opinion by a treating source. And the ALJ adequately reviewed the medical evidence in crafting Spears's RFC, as is appropriate. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). The ALJ also considered the other evidence in the record, and he explained his decision regarding his treatment of the medical opinions by the agency consultants and the consultative examiners.  Thus, we conclude that Spears does not set forth a basis for the court to conclude that the ALJ erred in this treatment of the medical opinions.

Spears also contends that the ALJ failed to consider how her purported need to prop her leg up at waist level throughout the day would impact her RFC, and he failed to include limitations in the RFC for her need for unscheduled breaks, her inability to remain on task, and her rate of absenteeism.  Again, however, the ALJ did not credit these limitations.  He addressed Spears's symptoms, contentions, and medical records.  And while Spears points to evidence that she contends supports additional limitations and suggests that the court accept her analysis of the evidence over the analysis set forth by the ALJ, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or

impose their own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)).  And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). In sum, the ALJ fulfilled his duty in evaluating Spears's contentions regarding her symptoms and weighed them against the entire medical record and her daily activities.[16]  In doing so, the ALJ provided an explanation for affording limited

---

[16]  One of Spears's activities of daily living that the ALJ cites is her "care for her 2 year old daughter." *Admin. Tr.* at 118.  Citing her function report and her hearing testimony, Spears contends that the ALJ's finding that she cares for her daughter is not supported by the record. *Doc. 19* at 23.  In her function report, Spears indicated that she cares for her daughter ("Bathes, feed"), although trying to care for her "is difficult" and her boyfriend helps with her daughter. *Admin. Tr.* at 302.  Spears also testified that she sometimes receives help with her 2-year old from her aunt, her nieces, and her roommate. *Id.* at 28–29.  She argues that "[i]n a single record there is reference to [her] being able to care for her child, however, this is not supported further in the record." *Doc. 19* at 23.  But the ALJ cited two places in the record that referenced Spears's caring for her child. *See Admin. Tr.* at 118 (citing Exhibit 12F, which is Dr. Ledermann's Mental Status Evaluation, and Exhibit 13F/2, which is an outpatient note from May 10, 2018).  Dr. Ledermann noted in her Mental Status Evaluation that Spears reported that "[s]he spends her days watching her child and she is taking a course to work on her high school diploma." *Id.* at 1114.  And the outpatient note from 5/10/2018, provides: "caring for 2yo daughter." *Id.* at 1120.  Spears's care for her daughter was only one of numerous reasons cited by the ALJ for his decision.  And contrary to Spears's assertion otherwise, the ALJ's reference to Spears's caring for her child is supported by the

weight to Spears's contentions.  Thus, we conclude that that ALJ's decision regarding Spears's RFC is supported by substantial evidence.

Within her argument that the ALJ failed to consider limitations from impairments that the ALJ considered non-severe, Spears contends that the ALJ should have considered her hydrocephalus to be a severe impairment at Step 2 of the sequential-evaluation process.

At step two of the sequential-evaluation process, the ALJ "determines whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).  Conversely, an impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" including:

> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;

---

record given Spears's testimony and function report (which support that she cares for her daughter with assistance) as well as Dr. Ledermann's report and the outpatient note.

(3)  Understanding, carrying out, and remembering simple
instructions;
(4)  Use of judgment;
(5)  Responding appropriately to supervision, co-workers and
usual work situations; and
(6)  Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b).  "A 'severe' impairment is distinguished

from 'a slight abnormality,' which has such a minimal effect that it would not be

expected to interfere with the claimant's ability to work, regardless of her age,

education, or work experience." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140,

144 (3d Cir. 2007) (citing *Bowen,* 482 U.S. at 149–51).

"The step-two inquiry is a *de minimis* screening device to dispose of

groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546

(3d Cir. 2003).  "The burden placed on an applicant at step two is not an exacting

one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  In fact,

"an applicant need only demonstrate something beyond 'a slight abnormality or a

combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work.'" *Id.* (quoting SSR 85–28, *Titles II and*

*XVI: Medical Impairments that are not Severe*, 1985 WL 56856, at *3 (Jan. 1,

1985)).  "Any doubt as to whether this showing has been made is to be resolved in

favor of the applicant." *Id.*

The ALJ did not consider Spears' hydrocephalus to be severe because it

required "no shunting and is considered benign by her treating physicians," she had

31

"no signs of increased intracranial pressure on examination," and "no abnormality was identified via brain CT in December 2016." *Admin. Tr.* at 114 (citation to the record omitted).  In support of her assertion that her hydrocephalus is severe, Spears points to an MRI of her brain that was performed on December 29, 2016. *Doc. 19* at 22 (citing *Admin. Tr.* at 405).  The impression from that MRI was: "congenital dilation of the ventricular atria.  Chronic right maxillary sinusitis." *Admin. Tr.* at 405.  Spears contends that this MRI "did confirm abnormalities that were linked to her migraine headaches, which is not noted by the ALJ." *Doc. 19* at 22.  Spears is correct that the ALJ did not specifically refer to this MRI report.  But he did refer to a medical report that referred to a CT scan of Spears's brain from December 2016. *See Admin. Tr.* at 117 (citing to Exhibit 14F/57, 60, which can be found at *Admin. Tr.* at 1228, 1231).  That medical report provides, in pertinent part:

> **HPI:**  . . . Patient states she gets a pain in her head described as a "brain freeze" sensation that lasts a few second and goes away.  She states she gets these episodes twice a week on average and they started after she gave birth to her daughter about two years ago.  Patient states that the head pain is predominately located on the right side and she gets associated tinnitus in her right ear.  She states it dissipates within a few seconds, but it stops her from what she is doing and makes her pause.  She denies any type of pattern or trigger that brings on the head pain.  Patient states it did not happen before she gave birth to her daughter, but she did have an incident during her pregnancy where she woke up with her face and tongue numb.  She states she went to the ER to be evaluated but they did not find a cause or anything emergent and she was sent home.  Patient states she gets headaches once a month.  Her headaches are also located on the right side of her head and are associated

32

with some blurred vision in both eyes, photophobia, and some phonophobia.  She states she is not concerned about her headaches at this time as she attributes them to not getting enough sleep, but she is concerned with the transient head pain that feels like a brain freeze.

. . .

**ASSESSMENT:**  20 year old right handed female with a history of hydrocephalus, cerebral palsy, depression, and anxiety has been experiencing transient episodes of head pain described as a brain freeze sensation for about 2 years, or since she gave birth to her daughter.  Based on the history, normal physical exam, brain CT from 12/2016 there is nothing to suggest a concerning cause for her brain freezes.  Some potential benign causes discussed included a hormone change or possible nerve irritation of pregnancy.  I would like to see her brain MRI done within the past year at Good Samaritan hospital to further evaluate for any etiology that could be causing her head pain episodes.  Discussion was had regarding her cerebral palsy likely due to a possible stroke she experienced in utero.  Reassurance was provided about her hydrocephalus likely being congenital and benign.

*Admin. Tr.* at 1228–31.

We note that the CT done on December 19, 2016, which appears to be the CT referred to in this medical note, contained the following impression: "Enlargement of the lateral and third ventricles. No prior imaging is available for comparison." *Id.* at 407.  And in a neurology outpatient note from December 30, 2016, noting that the 12/19/2016 CT "showed dilated lateral the third ventricles[,]" the doctor stated, "[h]owever, based on the history given by the patient and her normal examination, I suspect that the hydrocephalus is congenital/longstanding."

33

*Id*. at 814.  Given that the CT scan, which the ALJ did refence, like the MRI, which the ALJ did not reference, both show enlargement or dilation of the ventricles of the brain, we cannot say that the ALJ's failure to specifically cite to the MRI was error.

Here, the ALJ determined at step two of the sequential-evaluation process that Spears's hydrocephalus was not a severe impairment. *Id.* at 114.  But he determined that Spears had numerous other impairments that were severe, and he proceeded past the step-two analysis. *Id*. at 114–21.  In such circumstances, any error by the ALJ in concluding that a particular impairment was not severe is harmless error. *Salles*, 229 F. App'x at 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

Moreover, in crafting Spears's RFC, the ALJ did address her migraine headaches and brain freezes, which Spears contends are related to her hydrocephalus.  The ALJ found her migraines to be a severe impairment, he acknowledged that she claimed to be disabled because of migraines with blurred vision, and he noted that "per [her] records, her headaches are only once per month and are associated with a brief "brain freeze" sensation[,]" and that "no abnormality was identified via brain CT in December 2016[.]" *Admin. Tr.* at 114, 117 (citations to the record omitted).  In sum, the ALJ adequately addressed

34

Spears's hydrocephalus and migraine headaches, and his decision is supported by substantial evidence.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Spears.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge